**Robert Lee GRESHAM, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. 15616.**

Court of Criminal Appeals of Oklahoma.

Oct. 20, 1971.

Curtis A. Parks, Tulsa County Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

## DECISION AND OPINION

BRETT, Judge.

This is an appeal granted out of time. Plaintiff in Error, Robert Lee Gresham, hereafter referred to as the defendant, was convicted in the District Court of Tulsa County in that court's case number 21091, for the offense of Second Degree Burglary, After Former Conviction of a Felony. He was tried by a jury which assessed his punishment at not less than fifteen (15) years nor more than forty-five (45) years; on May 4, 1965, the court imposed the judgment and sentence, and set his appeal bond in the amount of fifteen thousand dollars, ($15,000.00). Defendant properly filed his Notice of Intent at Appeal, and requested the record to be prepared at State expense, which was denied; consequently, his appeal was not timely perfected to this Court. Thereafter, defendant was granted a Writ of Habeas Corpus from the Federal District Court, directing that the appeal be granted out of time. On April 19, 1969, the court reporter was ordered to prepare the case-made at public expense, and Mr. Jay D. Dalton, the Public Defender for Tulsa County, was directed to perfect this appeal.

In his Petition in Error, defendant sets forth five assignments of error which he argues in his brief under two propositions. His first proposition asserts the trial court committed error in refusing to give a requested instruction on temporary insanity; and his second proposition asserts that it was reversal error, when the court defined the term "reasonable doubt," when instructing the jury.

The facts revealed that defendant and another man were apprehended at the annex to the Wright Building in Tulsa, after having forced open the building entrance and broken into the night depository used by utility customers for payment of their city utility service bills. Mr. Bill Fain, a troubleshooter for Alliance Alarm Company, observed the signal light on their control panel about 12:10 or 12:20 A.M. on December 27, 1964, indicating some difficulty at the Wright Building. He immediately notified the police, went to the building and parked where he could see the building entrance. He testified that when he arrived at the building he saw two men squatting down taking envelopes out of the depository box and putting them into a sack; and that he observed the two men running from the scene; and the next time he saw the defendant he was sitting in the police car. He identified the defendant as being one of the two men.

Police Officer Floyd Rosson responded to the police call and testified that when he reached the Wright Building Annex he observed two persons run from the doorway, and that one of the persons was carrying a gunny sack. He related that one of the two men was this defendant who put up his hands and backed against the side of the building when he saw the officer. The gunny sack was retrieved and was found to contain envelopes addressed to the City of Tulsa; the envelopes contained a little more than five hundred and seventy dollars, ($570.00), in cash and checks.

Police Officer Frank Myres testified that he observed the defendant run out of the Wright Building, and after defendant was apprehended, he put handcuffs on him and took him to the police station. Police Officer Billy Harper testified that when he arrived at the scene, the defendant was in custody with another person, and that he observed the lock on the entrance door was broken. Officer Jack Hill testified that he released the envelopes taken in the burglary to a Mr. Schoeber, who worked for the City of Tulsa.

Defendant testified in his own behalf, and was the only witness offered in his defense. In his testimony, defendant related the history of his early life and his family background, and related his activities in other criminal matters, in an effort to support his theory of defense of insanity. After the defense rested its case, the State offered two additional rebuttal witnesses.

With reference to the defendant's first proposition, it is not enough in a criminal trial for a defendant to attempt to merely raise some doubt as to his emotional or mental instability, or even to offer proof

that he is emotionally or mentally ill, as was done in this trial. There must be other evidence or testimony tending to prove that defendant did not know right from wrong, and could not appreciate the wrongfulness of his criminal act at the time he committed it. See: Marr v. Page, Okl.Cr., 437 P.2d 562 (1968), which provides:

> The test of criminal responsibility for committing criminal act is fixed at point where accused has mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act.

In the instant case, defendant's testimony serves no other purpose than to constitute self-serving statements in an effort to establish his theory of defense. He was committed to the State Hospital at Vinita, Oklahoma, for observation, and by letter from Dr. B. F. Peterson, dated March 10, 1965, the District Court was advised that defendant was found not to be psychotic, that he could distinguish right from wrong and could assist his counsel in his defense.

The record of this trial reflects that defendant did not offer the court a written instruction requesting that the jury be instructed on the defense of insanity. It does show that the trial judge requested defense counsel to prepare such an instruction, but counsel went no further than orally requesting that the instruction be given. It is a well established rule in a criminal trial, if a defendant feels that additional instruction should be given, it is his duty to reduce that instruction to writing and submit it to the trial judge. This Court said in Wolf v. State, Okl.Cr., 375 P.2d 283 (1962):

> A defendant must present requested instructions in writing to the court, and it is not error for court to omit to instruct upon every possible question under defendant's theory of case when defendant has not requested such instructions.

Defendant cites the case of Lac Coarce v. State, Okl.Cr., 309 P.2d 1113 (1957) in support of his proposition. In *Lac Coarce* the trial court refused to allow a witness to express an opinion concerning whether or not the defendant could distinguish right from wrong. In the instant case that condition did not exist because defendant was permitted to offer his own testimony in an effort to prove his condition of insanity. We therefore deny defendant's first proposition.

■ With reference to defendant's second proposition, concerning the definition of "reasonable doubt" contained in the trial court's instructions to the jury, such does not constitute reversible error because the evidence of defendant's guilt was overwhelming; and also because at the time of his trial this Court had not specifically held this instruction to constitute reversible error. Therefore, under the facts of this case, we believe the proper administration of justice precludes this Court from holding that single error to constitute reversible error. We observe the case of Wilson v. State, Okl.Cr., 403 P.2d 262 (1965), which was a case tried the month following defendant's trial, in which this Court was confronted with a similar situation, in which that definition was given. In that case this Court held:

> * * * [H]ad the facts been controverted, and had the question been one of close decision, being based upon circumstantial evidence, the improper instruction defining reasonable doubt would have weighed heavily in warranting its reversal for a new trial. Certainly in that instance, that improper instruction coupled with another of equal gravity would have warranted such action.

As in Wilson's case, the evidence of defendant's guilt was overwhelming. Therefore, this Court considers that justice requires that instead of reversing the judgment and sentence, the sentence should be modified. The record in this case shows that the evidence of defendant's guilt is of such overwhelming nature that if the defendant should be tried again on the same evidence, he would sustain a second conviction. Therefore, the proper administration of justice under authority of 22 O.S.1961,

§ 1066, requires this court modify defendant's sentence herein. See also: Gable v. State, Okl.Cr., 424 P.2d 433 (1967).

It is, therefore, ordered that defendant's sentence of not less than fifteen (15), nor more than forty-five (45) years imprisonment shall be modified to be fifteen (15) years imprisonment, and as modified the judgment and sentence is affirmed.

The State Department of Corrections is hereby directed to assure that the penitentiary records of Robert Lee Gresham are corrected to show his sentence under case number 21091, District Court of Tulsa County, to be a straight fifteen (15) year sentence.

Judgment and sentence modified and as modified affirmed.

BUSSEY, P. J., concurs.