**David Paul HAMMER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-85-672.**

Court of Criminal Appeals of Oklahoma.

Aug. 11, 1988.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Randy Malone, Legal Intern, Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, David Paul Hammer, was tried by jury and convicted of Kidnapping (21 O.S.1981, § 741), Robbery with Firearms (21 O.S.1981, § 801) and Shooting with Intent to Kill (21 O.S.1981, § 652), all After Former Conviction of Two or More Felonies (21 O.S.1981, § 51(B)), in Oklahoma County District Court, Case No. CRF-84-1310, before the Honorable James B. Blevins. The jury set punishment during the second stage of trial at four hundred (400) years imprisonment for each count, to be served consecutively. Judgment and sentence was imposed accordingly. From these convictions, appellant has perfected this appeal. We affirm.

On October 28, 1983, Thomas Upton was driving in northwest Oklahoma City and was stopped at a traffic light, when appellant stuck a gun in the window of Upton's vehicle, got into the car, and ordered him to drive to a specified motel. Upon arriving at the motel, Upton was ordered to an upstairs room, where he was told to empty his pockets. During the time in the motel room, appellant would appear calm for a short period of time, but suddenly become agitated and violent. This mood change occurred several times throughout the evening. At one point, Upton unsuccessfully attempted to wrestle the gun away from appellant, but appellant hit him with the gun, threatened to kill him and ordered him into the bathroom.

Shortly thereafter, appellant forced Upton at gun point to leave the motel room and to drive to a deserted area on Sarah Road. When they arrived, he forced Upton

to disrobe and lie face down on the road. Appellant then fired three shots, in rapid succession, into the head and face of Upton. Unbelievably, Upton got up and chased appellant, who fled in Upton's car. Upton then walked three miles and was picked up by a passing motorist who took him to the hospital. At trial, Upton positively identified appellant as his assailant.

■ As his first assignment of error, appellant argues that reversible error was committed by admitting his confession. He asserts he was not given *Miranda* warnings immediately before his confession. He also urges, that in the event we determine that he was given adequate notice of his rights, the statements are still inadmissible as he did not waive these rights.

An explanation of the facts surrounding his confession is required. Appellant escaped from custody and was arrested in California. When he was being transferred back to Oklahoma, he was placed in the custody of two Oklahoma City police officers. Appellant was given his *Miranda* warnings as soon as he was turned over to the officers. The officers transported him to the airport and placed him into a holding cell for one and one half hours to await the arrival of the airplane. During the flight, one officer asked appellant about the kidnapping and robbery. Appellant stated he got into Upton's car at a stoplight. The officer also asked appellant if he shot Upton, to which he replied "I did shoot the guy in Oklahoma City [but] I don't want to tell you anything more about it." After appellant made this statement, the officer stopped all discussion.

Appellant argues these statements are inadmissible because he was not given *Miranda* warnings after the officers removed him from the holding cell. We do not find this argument persuasive. It is not required that the warnings immediately precede a confession. *See Vining v. State*, 675 P.2d 469, 470 (Okl.Crim.App.1984). As shown by *Garner v. State*, 500 P.2d 1340 (Okla.Crim.App.1972), a break in time between the warnings and a confession does not make the statements inadmissible. In *Garner*, a minor was given his rights, was

interrogated, and subsequently released. The following day, he was questioned again without the benefit of fresh *Miranda* warnings. During the second interview, he made incriminating statements. This Court held that the previous warnings sufficed to apprise the defendant of his rights. Therefore, the statements made during the second interview were admissible. Similarly, appellant was read his rights only a few hours before he made the incriminating statements. Hence, these statements are not inadmissible due to lack of *Miranda* warnings.

■ Appellant also contends that he did not waive his constitutional rights and therefore the statements are not admissible. We agree with appellant in that a waiver of constitutional rights must be intentional and with knowledge. We also agree that any statements taken in violation of these rights cannot be admitted. *See Browning v. State*, 648 P.2d 1261, 1267 (Okla.Crim.App.1982). However, a waiver need not be an explicit statement, as appellant suggests, but may take many different forms. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). Determination of whether appellant has waived these rights requires this Court to consider all of "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *North Carolina v. Butler, supra*, citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ This Court has previously held that a voluntary statement by a defendant coupled with the expressed understanding of his rights may constitute a valid waiver. *Shirey v. State*, 520 P.2d 701, 703 (Okla. Crim.App.1974). In that case, the defendant was given his rights and he expressly stated he understood them. He did not expressly waive them, but subsequently made a voluntary statement. This was deemed sufficient to constitute a waiver. Application of this reasoning to the present case persuades this Court that appellant waived his constitutional rights. He was read the *Miranda* warnings and stated un-

equivocally he understood those rights. He then made inculpatory statements as to the shooting of Upton, but declined to make further comments. Also important is the background and experience of appellant. He has previously been convicted of nine felonies. He was well-versed in the required procedures of the criminal law as shown by his pro se representation at trial. Thus, after consideration of all the surrounding circumstances, we believe appellant's actions constituted a valid waiver. This assignment is without merit.

Appellant next argues that fundamental error occurred when the trial court failed to sustain the motion to quash his prior convictions. Appellant asserts that the first four convictions alleged on the second page of the information arose out of the same transaction and that the next three convictions arose out of a second transaction. In support of his allegations, appellant shows the first four listed have consecutive numbers and judgment was entered on the same day. He also points out that judgment for the next three convictions were entered on the same day.

 Under 21 O.S.1981, § 51(B), the State is prevented from enhancing punishment with convictions that arose out of the same transaction or occurrence. *Smith v. State,* 644 P.2d 106, 107 (Okla.Crim.App. 1982). The defendant has the burden of showing the crimes were all part of a single transaction or occurrence. *Gross v. State,* 706 P.2d 914, 915 (Okla.Crim.App. 1985). In this case, appellant has failed to meet his burden of proof. Sequential case numbers and judgments entered on the same day do not establish that the crimes arose out of a single occurrence. *Vowell v. State,* 728 P.2d 854, 859 (Okla.Crim.App. 1986). Furthermore, all of the events which led to the questioned convictions occurred on different days and involved different victims. Accordingly, this proposition is without merit.

As his third assignment of error, appellant alleges he suffered prejudice due to prosecutorial misconduct. Appellant objects to the following comments made by Assistant District Attorney Lou Keel during trial:

Now, try and envision how [the victim] felt. Not only has he gone through this horrifying experience, but he has after being kidnapped, spending three hours with this man who's threatening to kill him, strikes him twice with the gun, goes out, has this man shoot him three times in the head, and then to top this off, he has the same man who does this, who commits these acts, show up at preliminary hearing, get in his face, argue with him time after time after time—.

I submit that you can believe everybody who testified in this case for the State of Oklahoma, even Mr. Hammer himself by way of Mr. Runyon, and that they all agree that these three crimes were committed and that this is the man beyond any reasonable doubt whatsoever ...

Appellant objected to the first comment but failed to object to the second.

 We believe that the first comment was a reasonable inference gathered from the evidence in the record. Testimony at trial revealed that Upton was threatened, struck with a gun and shot three times. As such, this comment was permissible especially in light of the fact that the judge asked Mr. Keel to eliminate further detail of this type to avoid prejudicing the jury. *See Stover v. State,* 674 P.2d 566, 567 (Okla.Crim.App.1984). As to the second comment, we agree that it was error. The prosecutor is prohibited from bolstering the credibility of his witnesses, or from commenting on the truth or veracity of testimony. As stated in *The ABA Standards for Criminal Justice, The Prosecutor's Function,* Section 3–5.8(b):

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

However, because appellant failed to object to this comment, we may only review for fundamental error. *See Freeman v. State,* 681 P.2d 84, 85 (Okla.Crim.App.1984). After consideration of the entire closing argu-

ment during the first stage, we cannot say it reached the level of fundamental error.

Appellant continues by pointing out comments made by Mr. Keel during the second stage of trial:

> You can see that anything less than twenty [years imprisonment] would be quite preposterous here, would not be following the law as you said in voir dire that you would follow the law that the judge instructed you.

Appellant also objects to comments made regarding his prior felony convictions and to a story told by Mr. Keel which was not based on evidence in the record. As the record reveals that appellant failed to object to any of these comments at trial, we again may only review for fundamental error.

As to Mr. Keel's comment regarding the amount of punishment, it is clear that a prosecutor is permitted to make a recommendation as to punishment. *Mahorney v. State*, 664 P.2d 1042, 1047 (Okla.Crim.App.1983). We also note that a similar comment was upheld by this Court in *Lawson v. State*, 739 P.2d 1006, 1009 (Okla.Crim.App.1987). In *Lawson*, the prosecutor made reference to the duty of the jurors in returning a verdict and setting punishment. In the case at bar, we believe the prosecutor's comment was permissible as a recommendation of punishment and as a reiteration of the jury's function.

Neither do we believe that the prosecutor's comment which made reference to prior convictions was error. It was a proper comment because evidence of nine prior felonies was admitted during the second stage of trial. *See Polk v. State*, 561 P.2d 558, 560 (Okla.Crim.App.1977).

Addressing the last comment pointed out by appellant, we agree that it was improper to comment on matters outside the record. *Id.* at 560. However, no objection was made at trial and we cannot say that this single statement amounted to fundamental error. Accordingly, this assignment is without merit.

As his final assignment of error, appellant asserts that fundamental error resulted from the State's failure to provide all evidence to appellant before trial. Specifically, appellant argues that the State was required to disclose the fact that they intended to use appellant's admissions made to the police officer on the airplane and that failure to do so was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This assertion is without merit for three reasons. First, the record shows that appellant was, in fact, notified of these statements five days before trial, and that the State offered to continue the trial to give appellant sufficient time to prepare. Appellant refused, and elected to proceed with trial. Second, the admissions were inculpatory rather than exculpatory. *Brady* only requires the defendant be given any information which tends to exculpate him. *Id.* 83 S.Ct. at 1196. Third, as this Court held in *Gregg v. State*, 662 P.2d 1385, 1388 (Okla.Crim.App. 1983), a prerequisite for relief for nondisclosure of information is that the defendant not have independent knowledge of the evidence. Here, not only did appellant have knowledge that the State intended to use the admissions, but he was clearly aware of the contents of the statements because they were made by him.

Accordingly, because we have found no error requiring reversal, the judgments and sentences are AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in results.